GORDON POWER-BOOTH,[1] Petitioner Below, Appellant,
v.
CAROLINE W. POWER-BOOTH, Respondent Below, Appellee.
No. 563, 2007.
Supreme Court of Delaware.
Submitted: October 29, 2008.
Decided: November 10, 2008.
Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

ORDER
JACK B. JACOBS, Justice.
This 10th day of November 2008, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:
1. Gordon Power-Booth ("Husband"), the petitioner-below, appeals from a Family Court order denying his Family Court Civil Rule 60(b) motion to reopen ancillary matters to a divorce proceeding. On appeal, Husband claims that the Family Court's findings were not the product of an orderly and logical deductive process, thus the Family Court order should be reversed and the ancillary matters reopened. We affirm.
2. This Court previously heard Husband's appeal of a cursory denial of his Rule 60(b) motion to reopen ancillary proceedings and remanded this case to the Family Court to hold a hearing on Husband's motion. The facts of this case are set out in some detail in this Court's remand order and the subsequent report prepared by the Family Court. What follows is a brief summary of the major facts.
3. Caroline Power-Booth ("Wife") filed for divorce in August of 2002. Husband filed his Answer pro se in September of 2002. A final divorce decree was entered in November of 2002, with the Family Court retaining jurisdiction over ancillary matters (namely, property division and alimony) at the request of Husband. The Family Court requested financial reports from the parties. Husband, as the party requesting ancillary relief was required to submit his financial report first. Husband filed a minimal report (characterized by the Family Court as "sketchy") and Wife filed a motion to dismiss the ancillary matters. Before the trial court could rule on that motion, Husband filed a motion for a refund of the $100 filing fee he paid to litigate the ancillary matters. The Family Court interpreted this motion as an indication Husband did not wish to litigate the ancillary matters. As a result, the Family Court granted Wife's request to dismiss the case.[2]
4. In April of 2003, Husband moved out of Wife's home. In June of 2003, the parties entered into a written agreement transferring their automobile to Husband. During this period, Husband was self-employed, driving the customers of a local grocery store to and from their homes.
5. Although Husband's medical history is also somewhat "sketchy," there is considerable evidence of depression. Husband was discharged from the U.S. Navy in January of 1995, based on a determination that he was medically unfit for duty (Husband had taken psychotropic medication; under U.S. Navy Regulations, sea duty personnel must not have taken psychotropic medication for three years). Husband used heroin between 1996 and 1998, but began addiction treatment at Brandywine Counseling in January of 1998. He had also received treatment at the VA Hospital and Rockford Center, although what sort of treatment Husband received is unclear. The strongest medical evidence was the testimony of Dr. Armand DeSanctis, Husband's general physician. Dr. DeSanctis began treating Husband in 1996 and treated him three times during the period of his divorce. Although Dr. DeSanctis was primarily treating Husband for a back injury, he diagnosed Husband as suffering from moderate to severe depression (including manic depression) that rendered him totally dysfunctional and unable to deal with the least amount of stress. Dr. DeSanctis recommended that Husband seek treatment from a psychiatrist. Despite being a veteran eligible to obtain psychiatric treatment at the VA Hospital, Husband did not seek psychiatric treatment.
6. In January of 2006, Husband moved under Rule 60(b) to reopen the ancillary matters, arguing that at the time of the divorce proceedings he was mentally ill and, therefore, incompetent to represent himself. The Family Court denied the motion and Husband did not appeal the denial.
7. In September of 2007, Husband again moved under Rule 60(b) to reopen the ancillary matters. Husband alleged that he was mentally ill during the divorce proceedings, continued to be mentally ill, and that his Wife knew of this mental illness yet failed to inform the court of Husband's incompetence. The Family Court cursorily denied the motion and Husband appealed to this Court. We remanded the case to the Family Court for a hearing on the motion. On remand, the Family Court held the Rule 60(b) hearing and denied Husband's motion.
8. Husband argues that the Family Court did not follow an orderly and logical deductive process in deciding the Rule 60(b)[3] motion, and, therefore, the Family Court's factual findings should be reversed. In our view, Husband's claim is without merit. Husband essentially reiterates his argument that at the time of the divorce proceedings he was suffering from major depression, was legally incompetent, and that his failure to litigate properly the ancillary proceedings constitutes "excusable neglect." The critical issue in this case is evidentiary: was there a sufficient basis in the record for the Family Court to conclude that Husband's mental illness was not severe enough for his failure to prosecute the ancillary proceedings to constitute excusable neglect?[4]
9. Trial court rulings on Rule 60(b) motions are reviewed under a three-prong test, although only the first prongwhether the conduct by the moving party that resulted in dismissal was the product of excusable neglect[5]is relevant here. "'[E]xcusable neglect' exists if the moving party has valid reasons for the neglectreasons showing that the neglect may have been the act of a reasonably prudent person under the circumstances."[6] Failure to comply with deadlines or abide by other court procedures due to mental illness may, under certain circumstances, constitute "excusable neglect."[7] "In determining whether the moving party's neglect was `excusable,' all surrounding circumstances may be considered."[8]
10. This Court will not disturb the Family Court's findings of fact if the record supports them, and the findings are the product of an orderly and logical reasoning process, even if we would have reached a different conclusion.[9] Here, Husband produced significant evidence that supports his claims of severe mental illness. There are, however, sufficient problems with Husband's proffered evidence that the Family Court could logically and reasonably conclude that Husband's mental illness was not so severe as to render him incapable of understanding the nature of his divorce proceedings and his procedural obligations therein.
11. For example, Husband introduced into evidence his January 1995 Notice of Separation from the Navy. That notice stated that Husband was discharged because of a disabling medical condition, as personnel on sea duty must not have taken psychotropic medication for three consecutive years. Husband had taken psychotropic medication in August 1994. No documentary evidence was provided to indicate why Husband was prescribed psychotropic medication, or what medication Husband received. Husband claimed that he had a nervous breakdown following his discharge from the Navy, and that he was depressed and received treatment from the VA Hospital. No record of any contemporaneous diagnosis of depression or record of any treatment at the VA Hospital was produced, however. For the period 1994 to the beginning of the divorce proceedings, there is no meaningful support for Husband's claims of mental illness.
12. Husband also introduced a letter from a Dr. Glick at Brandywine Counseling, stating that during the period of Husband's divorce he was being treated for major depression. Husband did not furnish any evidence to substantiate Dr. Glick's qualifications or diagnosis. Dr. Glick is not a psychiatrist or counselor, but, rather, heads the methadone treatment program at Brandywine Counseling. Husband was being treated at Brandywine Counseling because of his heroin addiction. The record does not indicate Dr. Glick's basis for diagnosing Husband as depressed or for the course of treatment prescribed.
13. Husband's strongest evidence was the testimony of Dr. DeSanctis, who initially began treating Husband in 1996 for a back problem. Dr. DeSantis saw Husband sporadically, but treated him three times during Husband's divorce proceedings. While treating Husband for other reasons, Dr. DeSanctis became aware of Husband's depression, and diagnosed Husband as moderately to severely depressed and "unable to deal with the least amount of stress."
14. Dr. DeSanctis was an internist, not a psychiatrist, and he based his diagnosis on Husband's self-reported medical history. Dr. DeSanctis did not examine any of Husband's mental health records to confirm independently Husband's claims, or administer any tests to ascertain Husband's mental health. Nor did Husband ever follow up on Dr. DeSanctis' suggestion that he seek psychiatric help from the VA Hospital. Because Husband had difficulty affording medication, Dr. DeSanctis gave him free samples of Zoloft on a few occasions, but Dr. DeSanctis has no record of how often he did that. Even though Dr. DeSanctis' testimony was Husband's strongest evidence, the Family Court did not give it significant weight because Dr. DeSanctis was not a psychiatrist and his diagnosis was based on Husband's self-reported mental health history. Further, the Family Court concluded that Husband's conduct during the relevant time period (taxiing passengers for hire and working out the automobile settlement agreement with Wife) was inconsistent with Dr. DeSanctis' conclusion that Husband's depression rendered him dysfunctional and unable to cope with the least amount of stress.
15. Although Husband claims that his mental illness was severe enough to make him incompetent at the time of his divorce, he is unable to reconcile that claim with his ability to work for pay and enter into an agreement with his former spouse to transfer their automobile to him. Husband concedes that he was able to comprehend the general nature of his divorce proceedings, but argues that he was unable to comply with what he "perceived as complex court rules." Although it is unclear what level of mental illness is sufficient to support a finding of excusable neglect for Rule 60(b) purposes, the level of dysfunction must involve more than an inability to comply with complex court rules. In that regard Husband's incapacity is no different from that of most litigants. Indeed, most fully competent parties are able to comprehend only the general nature of their legal proceedings, but are unableor able only with great difficultyto comply with court rules when appearing pro se. Therefore, it was proper for the Family Court to conclude that Husband was not so mentally ill as to be entitled to relief on grounds of excusable neglect.
16. Husband advances two additional and cursory arguments for reversal: (i) Wife's non-disclosure of Husband's mental illness to the Family Court was misconduct of an adverse party under Rule 60(b)(3); and (ii) the facts of the present case constitute "extraordinary circumstances" under Rule 60(b)(6). These arguments also lack merit.
17. Husband has not articulated any reasonable basis to conclude that Wife misled the Family Court. Although Wife knew that Husband had some history of depression, she was not a mental health professional and could not be expected to diagnose the state of Husband's mental health based on her interactions with him during the pendency of the divorce proceedings. Wife knew that Husband was working during this time-period, was obtaining treatment for his heroin addiction, and was preparing and submitting his own legal pleadings. Husband was apparently managing his own affairs adequatelyincluding obtaining counsel to represent him in a personal injury case and obtaining a settlement in that case. Thus, there was no basis for Wife to conclude that Husband was significantly mentally impaired or that she should inform the Family Court of Husband's mental illness or incompetence.
18. Husband also seeks to use the "catch-all" provision of Rule 60(b)(6) to reopen ancillary proceedings, but has not articulated any basis of entitlement to relief on this ground. Relief under the catch-all provision requires a showing of extraordinary circumstances.[10] The facts as determined by the Family Court on remand, however, do not provide a sufficient basis to conclude that the circumstances here were so extraordinary as to justify the exceptional remedy of reopening a final judgment.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.
NOTES
[1] The Court, sua sponte, has assigned pseudonyms to the parties under Supr. Ct. R. 7(d).
[2] This Court characterized the dismissal as apparently based on Husband's failure to file a financial report. The trial judge cannot recall his exact thinking 5 years later, but believes that the filings made it clear that both parties desired the ancillary matters dismissed and the case closed. He specifically stated in his report that the case was not dismissed due to Husband's failure to file a financial report.
[3] Family Court Civil Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the Court may relieve a party... from a final judgment... for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect... (3) fraud... misrepresentation or other misconduct of an adverse party... or (6) any other reason justifying relief from the operation of the judgment.
[4] We review a denial of a motion to reopen ancillary matters for abuse of discretion. See French v. French, 1992 WL 453269 at *1 (Del. 1992) (citations omitted). Here, the central dispute is whether the Family Court had a proper factual basis to conclude that Husband was not sufficiently mentally ill to meet the requirements for excusable neglect under Rule 60(b). Thus, it is only necessary to engage in an evidentiary analysis.

Lurking in the background of this evidentiary question is the issue of what level of mental illness is sufficiently severe to constitute excusable neglect. Neither party has directly addressed that issue. However, both parties have briefed and argued this case under the theory that for Husband's failure to litigate the ancillary matters to constitute excusable neglect, the mental illness must amount to incompetence. The analysis of whether Husband's mental illness renders his failure to prosecute the ancillary matters excusable neglect, thus assumes that only a mental illness severe enough to constitute incompetence could give rise to excusable neglect.
[5] See Donohue v. Donohue 2005 WL 1421023 at *1 (Del. 2005).
[6] DiSabatino v. DiSabatino, 2007 WL 812766 at *3 (Del. 2007).
[7] See Ravine v. Ravine, 2006 WL 453213 at *2 (Del. 2006).
[8] See DiSabatino 2007 WL 812766 at *3 (citing McDonald v. S & J Hotel. Enters., 2002 WL 1978933 at *2 (Del. Super. 2002)).
[9] Id. at *2 (citing Levitt v. Bouvier, 287 A.2d 671, 673 (Del. 1972)).
[10] J.H.W. v. K.M.W., 2006 WL 4552887 at *4 (Del. Fam. Ct.) (stating "As an independent ground, relief under [Rule 60(b)(6)] is considered an extraordinary remedy and requires a showing of extraordinary circumstances.") (citations omitted).